1

2

3

4

5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

6

7

8

9

10

UNITED STATES OF AMERICA,

Plaintiff,

v.

JOSEPH VERNON GRUBBS,

Defendant.

CR16-228 TSZ

ORDER

11      THIS MATTER comes before the Court on defendant Joseph Vernon Grubbs's

12  motion for compassionate release, docket no. 92.  Having reviewed all papers filed in

13  support of, and in opposition to, the motion, the Court enters the following order.

14  **Background**

15      Defendant pleaded guilty to receipt of child pornography and was sentenced on

16  October 5, 2017, to nine years (108 months) in the custody of the United States Bureau of

17  Prisons ("BOP").  _See_ Judgment (docket no. 70).  Defendant was remanded at the time of

18  sentencing and is currently incarcerated at Federal Correctional Institution ("FCI")

19  Terminal Island in California, with a projected release date of April 15, 2025.  He seeks

20  immediate release on the ground that his age (72) and medical conditions (hypertension,

21  class 2 obesity, type 2 diabetes, asthma, gout, a cardiac arrhythmia, and the lingering

22  effects of Coronavirus Disease 2019 ("COVID-19")) increase the possibility of acute

23

ORDER - 1

1   illness or death from COVID-19, which warrants a reduction in his sentence.  The Court

2   agrees.

3   **Discussion**

4        A sentence is generally considered final and may not be altered except in limited

5   circumstances.  _See_ 18 U.S.C. § 3582(b); _see also_ _Dillon v. United States_, 560 U.S. 817,

6   824 (2010).  Prior to 2018, a modification for reasons other than a post-conviction

7   lowering of the applicable sentencing range could be made only upon a motion brought

8   by the Director of BOP.  _See_ _United States v. Rodriguez_, --- F. Supp. 3d ---, 2020 WL

9   1627331 at *2 (E.D. Penn. Apr. 1, 2020).  Congress has since enacted the First Step Act

10  of 2018, which permits a defendant, after exhausting administrative remedies,[1] to directly

11  request a reduction in the term of incarceration.  _See_ 18 U.S.C. § 3582(c)(1)(A).  The

12  First Step Act did not, however, amend the two statutorily-enumerated grounds for

13  compassionate release, namely (i) the existence of "extraordinary and compelling

14  reasons" supporting a reduction; or (ii) the satisfaction of certain criteria for a defendant

15  sentenced to life imprisonment under 18 U.S.C. § 3559(c).  _See id._ at § 3582(c)(1)(A)(i)

16  & (ii). The second basis for relief does not apply in this case, and thus, defendant Joseph

17  Vernon Grubbs bears the burden of establishing that "extraordinary and compelling

18  reasons" justify a decrease in the term of his imprisonment.  _See_ _Riley v. United States_,

19

20

---

21  [1] The exhaustion requirement is satisfied on the earlier of (i) the resolution of an administrative
    appeal concerning BOP's failure to bring a motion for early release on a defendant's behalf, or

22  (ii) the lapse of thirty (30) days after the warden of the facility at which the defendant is in
    custody receives a request to make such motion.  18 U.S.C. § 3582(c)(1)(A).  The parties agree

23  that defendant in this matter has met the prerequisite of exhaustion.

1   2020 WL 1819838 at *7 (W.D. Wash. Apr. 10, 2020).  Any compassionate release must

2   also be consistent with (i) the sentencing factors set forth in 18 U.S.C. § 3553(a), and

3   (ii) the applicable policy statement issued by the United States Sentencing Commission

4   ("Commission").  *See* 18 U.S.C. § 3582(c)(1)(A).

5   **A.    <u>Extraordinary and Compelling Reasons</u>**

6           The Government has conceded that defendant's age and medical conditions, which

7   increase his risk of fatality from COVID-19, constitute "extraordinary and compelling

8   reasons" for a sentence reduction.  *See* Supp. Filing (docket no. 103).  The Court accepts

9   the Government's concession as being consistent with defendant's well-documented,

10  serious medical conditions, *see* BOP medical records, Ex. A to Def.'s Mot. (docket

11  no. 94), which render him extremely vulnerable to the coronavirus that causes COVID-

12  19.  The Government's position is also in harmony with the following factors, which

13  have been considered by one or more courts in deciding motions for compassionate

14  release in the context of COVID-19:  (i) whether the inmate is at higher risk because of

15  his or her age and/or race, *see United States v. Young*, 2020 WL 2614745 at *3 (W.D.

16  Wash. May 22, 2020); (ii) whether the inmate has one or more, medically-documented,

17  chronic health conditions that render him or her more vulnerable to COVID-19, *see*

18  *United States v. Locke*, 2020 WL 3101016 at *4 (W.D. Wash. June 11, 2020) (observing

19  that the movant's health issues were "not merely self-diagnosed," but rather "medically

20  documented and verified"); *Rodriguez*, 2020 WL 1627331 at *7 (inmate with type 2

21  diabetes, obesity, hypertension, and liver abnormalities was in a "higher risk category");

22  (iii) the fatality rate for individuals with similar health conditions as compared with the

23

ORDER - 3

overall fatality rate for COVID-19, *see* *Rodriguez*, 2020 WL 1627331 at *7 (summarizing

COVID-19 fatality rates); *United States v. Pippin*, 2020 WL 2602140 at *1 (W.D. Wash.

May 20, 2020) (granting a motion brought by a defendant suffering from pancytopenia,

which is associated with an "over fivefold enhanced risk of severe COVID-19");

(iv) whether the inmate has previously tested positive for the coronavirus that causes

COVID-19 and, if so, whether the inmate suffers from any long-term effects of the

disease, *see* *United States v. Reynolds*, 2020 WL 3266532 at *3-4 (W.D. Wash. June 17,

2020) (denying a motion for compassionate release brought by an inmate who recovered

from and was "not suffering from any reported lingering symptoms" related to COVID-

19); and (v) whether the inmate's release is expected to reduce the risk of him or her

contracting COVID-19, *see* *United States v. Sandoval*, 2020 WL 3077152 at *5 (W.D.

Wash. June 10, 2020) (declining to release a defendant to a situation that "would likely

place him at greater risk").  The Court has discretion to consider these factors,[2] which are

not exhaustive, and they support a finding that defendant has made the requisite showing

of "extraordinary and compelling reasons" for compassionate release.

---

[2] In the application notes to United States Sentencing Guideline ("USSG") § 1B1.13, the
Commission has described three categories of potentially "extraordinary and compelling
reasons," namely medical condition, age, and family circumstances, *see* USSG § 1B1.13 cmt.
n.1(A)-(C), as well as a "catch-all" provision, *id.* cmt. n.1(D), which "opens the door" to
considering factors other than those specifically enumerated, *see* *United States v. McPherson*,
--- F. Supp. 3d. ---, 2020 WL 1862596 at *4 (W.D. Wash. Apr. 14, 2020).  USSG § 1B1.13 has
not been updated since the passage of the First Step Act of 2018, and district courts nationwide
are split on the question of whether the Commission's list of "extraordinary and compelling
reasons" is binding.  *See* *United States v. Almontes*, 2020 WL 1812713 at *3 & n.5 (D. Conn.
Apr. 9, 2020); *see also* *Sandoval*, 2020 WL 3077152 at *3-4.  The Court concludes that, given
the "catch-all" provision of the Commission's application notes and the non-binding status of the
comments to USSG § 1B1.13, it has discretion to construe the meaning of "extraordinary and
compelling reasons." *See* *Locke*, 2020 WL 3101016 at *4; *Rodriguez*, 2020 WL 1627331 at *4-6.

**B.**     **Applicable Sentencing Factors and Policy Statement**

Both the statute at issue and the Commission's policy statement require the Court to consider the applicable sentencing factors set forth in 18 U.S.C. § 3553(a).  _See_ 18 U.S.C. § 3582(c)(1)(A); USSG § 1B1.13.  The policy statement further mandates that a defendant may be granted compassionate release only if he or she is "not a danger to the safety of any other person or to the community," as evaluated in the manner outlined in 18 U.S.C. § 3142(g), which governs the release or detention of an accused pending trial.  _See_ USSG § 1B1.13(2).  Sections 3142(g) and 3553(a) have substantial overlap, both indicating that the Court should take into account (i) the nature and circumstances of the charged offense, (ii) the history and characteristics of the defendant, and (iii) the nature and seriousness of the danger to any person or the community that would be associated with the defendant's release.  _See_ 18 U.S.C. §§ 3142(g)(1), (3), & (4), and 3553(a)(1) & (2)(C).  Section 3553(a) also directs the Court to choose sentences that promote respect for the law, impose just punishment of the offense, afford adequate deterrence, provide training, medical care, and correctional treatment in the most effective manner, and avoid sentence disparities among similarly-situated defendants.  18 U.S.C. §§ 3553(a)(2) & (6).

The Court concludes that a reduction in defendant's sentence is consistent with these various factors.  Defendant's offense was a serious one, warranting a lengthy term of incarceration; defendant was not a passive recipient of child pornography, but rather exploited the misfortunes of others in a less-developed country and directed them to sexually assault minors between the ages of 12 and 16 for his gratification.  The crime for

1   which defendant was convicted carries a mandatory minimum term of five years,[3]

2   reflecting that, although Congress is concerned about this type of behavior, the conduct is

3   not considered as dangerous and/or heinous as offenses associated with longer mandatory

4   minimum sentences.  Defendant, who has no other criminal history and who served in the

5   military for eight years, is certainly not deserving of a death sentence, which is a

6   potential outcome if he is not released, given his age and poor health and his custody at

7   FCI Terminal Island.[4]  To risk defendant's life under the circumstances does not promote

8   respect for the law, impose just punishment, avoid sentencing disparities, or provide

9   medical care and correctional treatment in the most effective manner.

10          In opposing defendant's motion for compassionate release, the Government argues

11  that a reduction in defendant's sentence would not protect the local or global community,

12  in light of defendant's lack of remorse or insight at sentencing, his poor attitude toward

13  pretrial supervision, the ease with which defendant could reoffend using any electronic

14  device, and the difficulties posed by the COVID-19 crisis in adequately supervising

15  defendant post-release.  The Court acknowledges the Government's concerns, some of

16

---

[3] The Government does not contend that the statutory minimum term of incarceration precludes defendant's compassionate release, and the Court concludes that defendant need not complete the five-year mandatory sentence before he can obtain relief under § 3582(c)(1)(A).  *See United States v. Somerville*, --- F. Supp. 3d ---, 2020 WL 2781585 at *11-12 (W.D. Penn. May 29, 2020); *United States v. Bess*, --- F. Supp. 3d ---, 2020 WL 1940809 at *11 (W.D.N.Y. Apr. 22, 2020); *Rodriguez*, 2020 WL 1627331 at *12.  *But see United States v. Varnado*, 2020 WL 2512204 at *1 n.1 (S.D. Cal. May 15, 2020) (observing that the Ninth Circuit has not addressed the issue and doubting the soundness of *Bess* and other out-of-circuit authorities).

[4] As of June 30, 2020, FCI Terminal Island had completed 967 tests for the coronavirus that causes COVID-19; 673 inmates had positive results, five tests were still pending, and ten inmates have died.  *See* https://www.bop.gov/coronavirus.

ORDER - 6

1   which have been grounds for denying other motions under § 3582(c)(1)(A).  *E.g.*, *United*

2   *States v. Robinson*, 2020 WL 3433146 at *4-5 & n.5 (W.D. Wash. June 23, 2020); *United*

3   *States v. Sims*, 2020 WL 2838611 at *6 (W.D. Wash. June 1, 2020).  The Court, however,

4   is persuaded that the potentially dire consequences to defendant's health if he violates the

5   conditions of supervised release and is returned to custody will motivate him to be

6   compliant and cooperative.

7         Defendant must serve fifteen (15) years on supervised release.  The mandatory,

8   standard, and special conditions of supervision include *inter alia* refraining from

9   committing another crime, registering as a sex offender, abstaining from the use of

10   alcohol, submitting to searches and monitoring of all electronic devices, staying more

11   than 100 feet away from areas where minors are known to frequent, avoiding any

12   unsupervised direct or indirect contact with children, participating in a sexual deviancy

13   treatment program, and undergoing periodic polygraph testing.  *See* Judgment (docket

14   no. 70).  The Court is satisfied that these conditions of supervision substantially reduce

15   the chances of defendant repeating the kind of behavior for which he was convicted.  The

16   Court also concludes that any public safety risk associated with defendant's early release

17   is obviated by defendant's access to benefits through the United States Department of

18   Veterans Affairs (the Veterans Administration), including placement at the Salvation

19   Army's William Booth Center.

20

21

22

23

ORDER - 7

1                Nevertheless, to further alleviate fears about defendant's potential future

2    dangerousness and to avoid disparity in sentences for similar crimes, the Court hereby

3    imposes the following additional conditions[5] of supervised release:

4              1.      Defendant shall have no contact, directly or indirectly, with any electronic

5    device that communicates data via modem, nor shall defendant have any contact with any

6    electronic device that communicates data through a dedicated connection, except when

7    explicitly allowed by the probation officer, and with the approval of and under

8    supervision by a supervisor as a requirement of employment.  In addition, defendant shall

9    be prohibited from having Internet access during defendant's period of supervision; and

10             2.      Defendant shall participate in the location monitoring program with Active

11    Global Positioning Satellite technology for a period of two years.[6]  During this two-year

12    period, defendant shall be restricted to his residence at all times except for employment,

13    religious services, medical or legal reasons, or as otherwise approved by the location

14    monitoring specialist.  Defendant shall abide by all program requirements, and must

15    contribute towards the costs of the services, to the extent financially able, as determined

16    by the location monitoring specialist.

17

18

19

20

21

22

23

---

[5] When reducing a sentence for "extraordinary and compelling reasons," the Court has authority to "impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment."  18 U.S.C. § 3582(c)(1)(A). Because defendant must already serve fifteen (15) years on supervised release, the Court will not impose any further period of supervision, but consistent with § 3582(c)(1)(A), the Court is exercising its discretion to require defendant to comply with additional conditions of supervised release.

[6] This two-year period of home confinement reflects approximately the unserved portion of the five-year mandatory minimum sentence for the crime of conviction.

ORDER - 8

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1)     Defendant's motion for compassionate release, docket no. 92, is GRANTED, and defendant's term of imprisonment is reduced to time served, **provided as follows**:

(a)     To ensure that defendant does not transmit a known pathogen to the community, within 24 hours after entry of this Order, defendant shall be tested for the coronavirus that causes COVID-19 and, if he tests negative, he shall be released within 48 hours after the results are received, but if he tests positive, he shall be placed in quarantine at FCI Terminal Island for a 14-day period and then retested; if he remains positive, he shall be quarantined for another 7-day period and retested; this quarantine protocol shall be in effect until he tests negative, at which time the 48-hour deadline for release shall apply;

(b)     Upon release, defendant shall reside at the Salvation Army's William Booth Center until authorized by probation to reside in other approved housing;

(c)     The 15-year period of supervised release shall commence immediately upon defendant's release from custody, during which time defendant shall be subject to the mandatory, standard, and special conditions of supervision set forth in the Judgment, docket no. 70, as well as the additional conditions of supervised released outlined in this Order; and

ORDER - 9

(d)     Defendant shall contact the United States Probation Office in Seattle and/or California within 24 hours of his release and follow all instructions he is given.

(2)     The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 8th day of July, 2020.

Thomas S. Zilly
United States District Judge

ORDER - 10